UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SALLY GREENHOUSE | : | |
| | : | |
| VS. | : | NO. 3:05CV1429(AHN) |
| | : | |
| YALE UNIVERSITY | : | DECEMBER 10, 2005 |

**BRIEF IN OPPOSITION TO MOTION TO DISMISS**

    This is an action by a former student at the Yale Drama School. The action alleges sex discrimination in violation of Title IX of the Educational Amendments of 1972, Sections 1681 - 1688 of Title 20 of the United States Code. The action also alleges intentional infliction of emotional distress in violation of Connecticut common law. The defendant has moved to dismiss only the allegation of intentional infliction of emotional distress. It does so on two grounds: (1) that the cause of action does not arise from facts "so related...that they form part of the same case or controversy," 28 U.S.C. § 1367(a); (2) that the conduct alleged, although sufficient to constitute, if proven, the exclusion of the plaintiff from participation in, denial of the benefits of or discrimination under an education program or activity receiving Federal Financial assistance on the basis of sex, was not "extreme and outrageous" within the meaning of state law.

1

A motion to dismiss can be granted only when "it appears beyond a doubt" that a plaintiff fails to state any claim upon which relief may be granted.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The motion must be decided solely on the face of the complaint.  Goldman v. Belden, 754 F.2d 1059, 1065-66 (2d Cir. 1985).  All facts alleged in the complaint are presumed to be true and must be considered in the light most favorable to the non-moving party.  Williams v. Avco Lycoming, 755 F. Supp. 47, 49 (D. Conn. 1991).  Dismissal may not be granted "unless 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Feiner v. SS & C Technologies, 11 F. Supp.2d 204, 207 (D. Conn. 1998) (Hall, J.), quoting I. Meyer Pincus & Associates V. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991).  "Dismissal is 'appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000).  Quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "This rule applies with particular force where the plaintiff alleges civil rights violations...." Cruz v. Gomez, 202 F .3d 593, 597 (2d Cir. 2000), quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Wright v. Ernst & Young LLP, 152 F.3d 169, 173 (2d Cir. 1998).

The defendant's first argument is entirely beside the point. It is based on the assumption, apparently, that the plaintiff bases her allegation of jurisdiction on the court's supplementary jurisdiction under the Judicial Improvements Act of 1990, 28 U.S.C. § 1367(a), authorizing district courts in federal question cases to exercise supplemental jurisdiction over both additional claims and additional parties if they are "so related...that they form part of the same case or controversy...." It is the clear intent of the statute that all issues arising out of a single event should be tried together in one trial and not split between federal and state courts as was too often the case in days of yore. See Miller v. Lovett, 879 F.2d 1066 (2d Cir. 1989). The statute imposes a mandatory requirement that the courts accept related state tort claims. McLaurin v. F. C. Prater, 30 F.3d 982 (8th Cir. 1994); Surprise v. GTE Service Corp., 47 F. Supp. 2d 240 (D. Conn. 1999) (Arterton, J.).

What the defendant fails to note is that the plaintiff has asserted jurisdiction of the state claim under 28 U.S.C. § 1332. This is a diversity case. The plaintiff resides in Massachusetts. The amount in controversy is alleged to be greater than $75,000. The defendant's first argument, therefore, is simply irrelevant.

As to the second argument, it is necessary to consult the allegations of the complaint and see whether a reasonable jury could find such conduct, if proved, to be "extreme and outrageous" within the meaning of the many Connecticut cases that have considered the issue. These are the allegations:

3.  The plaintiff is an adult female resident of the State of Massachusetts.  At the time of the events herein described, she was forty-nine (49) years of age, had studied at the Harvard Divinity School, and had extensive experience in the professional theatre.

5.  The plaintiff enrolled as a graduate student in the Directing Department at the Yale School of Drama at Yale University in September of 2002.

6.  Shortly after matriculating at the Drama School, the plaintiff was warned by a female member of the faculty of Yale University to "keep [her] distance" from a certain male graduate student at the Drama School, whom the faculty member described as a "psychotic" and potentially dangerous man who had been "stalking" another female student.

7.  The plaintiff thereupon contacted the Interim Chair of the Directing Department to convey her concerns about the information delineated in Paragraph 6.  In response, the Interim Chair contacted the plaintiff on September 18, 2002, shouting at the plaintiff: "I'm really pissed off at you for reporting this to me!"  The Interim Chair accused the plaintiff of being "coy and provocative" and referred to the male graduate student as a "fucker" who "is a recovering alcoholic, so he's going to have issues."  The Interim Chair concluded her tirade by suggesting that if the plaintiff was concerned about the male graduate student she should seek psychiatric help and stated: "Aw, come on, Sally, you're a strong woman, you can handle this guy."

8.  On September 21, 2002, the plaintiff was participating in a special workshop in collaborative process which all first-year acting, directing and dramaturgy students were required to attend for the express purpose of learning the skills necessary for collaborative composition in a project based on Homer's "Odyssey".  The project, by agreement among faculty and students, was entitled "Metamorphoses Revisited."  The plaintiff was onstage for that project when the instructor, Frank Diehl, announced that he had changed the title to  "Metamorphoses Revisited Or Rock Out With Your Cock Out" and instructed the male actors to simulate masturbation while standing next to the plaintiff.  This simulation actually occurred, to the plaintiff's great and obvious humiliation and distress, whereupon the instructor called out: "That was great!  Now this time do it again, only really come!"  As the male actor closest to the plaintiff began

to simulate orgasm, the plaintiff fled the stage as another male student attempted to physically restrain her.

9.  Later that day, the plaintiff formally complained to the Chair of the Acting Department about these events, stating that she was "deeply offended" by the abuse to which she had been subjected and that there could not possibly be any pedagogical justification or artistic value in these activities.

10.  Four days later, on September 25, 2002, the Interim Chair of the Directing Department telephoned the plaintiff and informed her that she would be required to attend a meeting on September 27.

11.  At the meeting on September 27, 2002, the plaintiff was berated and placed "on warning" as a preliminary to dismissal from the Drama School.  The plaintiff was specifically told that she was being placed "on warning" for three events: (1) having complained during the admission process about perceived sexual discrimination in the financial assistance program; (2) having reported her concerns about the male graduate student; and (3) having complained about the "Rock Out With Your Cock Out" incident.  A male faculty member present at that meeting further stated to the plaintiff: "Sally, I am legally bound to tell you that if you withdraw by Monday, you can receive two-thirds of your tuition money back."

12.  Thereafter, for the duration of the academic year, the plaintiff was subjected to a pattern of disparate treatment in comparison to the males in her class and was subjected to an atmosphere of "macho" and "frat house" behavior by students and faculty.  On one occasion, the Dean of the Drama School kissed her.  All of this behavior was unfair, discriminatory, uninvited, unwelcome and highly inappropriate.

13.  On May 15, 2003, the plaintiff was dismissed from the University despite having done work obviously superior to that of the male students in the program, none of whom was dismissed.

14.  The plaintiff thereafter pursued her administrative remedies within Yale University, all of which were rejected by the defendant.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Hartmann v. Gulf View Estates Homeowners Association, Inc., 88 Conn. App. 290, 295 (2005). If "reasonable minds" could disagree on that issue, the issue must be determined by the jury. *Ibid.* As the court held in Mascia v. Faulkner, No. 349036, pp. 12-13 (New Haven J. D. 1995) (Fracasse, J.): "Summary judgment is inappropriate for issues involving 'motive, intent and subjective feelings and reactions,' United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376. [Defendant's] intent, **whether the conduct was extreme and outrageous**, whether [defendant's] conduct caused the [plaintiffs'] distress, and the severity of the [plaintiffs'] distress are all genuine issues of material fact for the jury." *Cf.*, *e.g.*, Berry v. Loyseau, 223 Conn. 786, 807 (1992); Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988); Gilman v. Gilman, 46 Conn. Sup. 21, 23 (1999); Lugo v. Rodriguez, 8 CSCR 244 (1992); Hansen v. Berger, Lehman Assoc., 9 CSCR 1243, 12 Conn. L. Rptr. No. 17, 555 (1994). See also Batick v. Seymour, 186 Conn. 632, 646-47 (1982). Courts in sister jurisdictions take the same position. E.g., Shubbe-Hirt v. Baccigalupi, 94 F.3d 111 (3d Cir. 1996); Halio v. Lurie, 15 A.D.2d 62, 222 N.Y.S.2d 759, 764 (2d Dept. 1961); Murphy v. Murphy, 486 N.Y.S.2d 457, 459 (3d Dept. 1985); Flatley v. Hartmann, 138 A.D.2d 345, 525 N.Y.S.2d 637, 638 (2d Dept. 1988); Richard v. Armon, 144 A.D.2d 1, 4, 536 N.Y.S.2d 1014, 1016 (2d Dept. 1989); Collins v. Willcox Inc., 158 Misc.2d 54, 57, 600 N.Y.S.2d 884, 886 (N.Y. County, 1992).

"Extreme and outrageous" conduct is conduct less serious and less offensive than conduct which "shocks the conscience" under the federal substantive due process standard. Oppenheim v. Gruell, 38 Conn. L. Rptr. No. 14, 533 (2005) (Corradino, J.) Many courts have held facts no more offensive than those alleged here to be sufficiently "extreme and outrageous" to meet that element of the wrong.

In Berry v. Loyseau, 223 Conn. 786 (1992), an employee was threatened by one employer and assaulted by another. In Benton v. Simpson, 78 Conn. App. 746 (2003), a supervisor's repeatedly telling three subordinates that they "made him sick" and were a "cancer" in the company not only was sufficiently extreme and outrageous to justify litigation but was sufficient to establish probable cause for a $500,000 attachment of the supervisor's personal assets. In Brown v. Ellis, 40 Conn. Sup. 165 (1984), the plaintiff's job supervisor had given him work assignments in disregard of his fear of heights.[1] In Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17 (1991), the plaintiff's supervisor had taunted him about his alcoholism. In Centi v. Lexington Health Care Center, 1997 Conn. Super. LEXIS 1202 (Licari, J.), the court held that the actions of the defendant in terminating the plaintiff's employment were sufficiently extreme and

---

[1] "An additional consideration in determining whether extreme and outrageous behavior exists is whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil." Honaker v. Smith, 256 F.3d 477, 492 (7th Cir. 2001).

outrageous to be submitted to a jury for determination because the termination of employment was accompanied by a change of work assignments, the setting of unrealistic goals for the employee, the supervisor's coming to the employee's house on a Sunday, and the giving of pretextual reasons for termination.  In <u>Gilman v. Gilman</u>, 46 Conn. Sup. 21, 736 A.2d 199 (1999), the defendant had telephoned the police and falsely reported that her ex-husband was smoking marijuana in his house, at a time when she knew he was entertaining a new girlfriend, resulting in disruption of their dinner.  In <u>Nance v. M.D. Health Plan, Inc.</u>, 47 F. Supp. 2d 276 (D. Conn. 1999), the court held that an employer's questioning that signaled to others its belief that the plaintiff was a homosexual could be found sufficiently "extreme and outrageous" in the eyes of a jury to constitute a basis for a finding of intentional infliction of emotional distress.  In <u>Caesar v. Hatford Hospital</u>, 46 F. Supp. 2d 174 (D. Conn. 1999), the court held that an employer's acts in discriminating against the plaintiff and making false reports regarding her to the Department of Public Health were sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress.  In <u>Kennedy v. Coca-Cola Bottling Co. of New York, Inc.</u>, 170 F. Supp. 2d 294, 298 (D. Conn. 2001), the court held that the actions of an employer in disclosing to the employees and supervisors involved in wrongdoing the plaintiff's complaints that they had engaged in a variety of illegal or improper activities at the workplace, with the result that the plaintiff suffered retaliation and harassment, was conduct sufficiently "extreme and outrageous" to go to a jury.  In <u>McKelvie v. Cooper</u>, 190 F.3d 58 (2d Cir. 1999), the Second Circuit,

applying Connecticut law, held that the alleged actions of police officers in abusing the patron of a bar during a search of the premises could be found by a jury to be sufficiently extreme and outrageous to warrant a verdict in the plaintiff's favor.  In Moss v. Town of East Haven, 2001 WL 1002684, at *2 (Conn. Super. 2001), the court held that a police officer's conduct at the plaintiff's home in threatening the plaintiff "with his hand on his exposed service revolver" while not allowing the plaintiff to leave, was sufficiently "extreme and outrageous" to warrant submitting the action to a jury's determination.  In Bell v. Board of Education, 55 Conn. App. 200, 739 A.2d 321 (1999), the court held that allegations that the defendant imposed a system of education which created a pervasive atmosphere of fear and terror in an elementary school classroom over a two-year period adequately alleged conduct which a jury could find was "extreme and outrageous".[2]  See also Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), holding that the actions of a school teacher in humiliating a student in class because of her clinical depression was "extreme and outrageous" under Virginia law.  In Rosten v. Circuit Wise, Inc., 7 C.S.C.R. 1147 (1992), an employer discharged the plaintiff because of her union organizing activities.  In Lugo v. Rodriguez, 1991 WL 10802, 5 Conn. L. Rptr.

---

[2] In Appleton v. Board of Education, 254 Conn. 205 (2000), the Supreme Court cited Bell with approval.  Appleton held that an employer's actions in "condescending" to the plaintiff, suggesting to her daughter that she should "take a few days off from work" and having her escorted off the premises by police did not reach the minimum standard articulated in Bell and other cases for conduct which is "extreme and outrageous".

9

800, 8 C.S.C.R. 244 (1992), an attorney intentionally delayed in releasing a lis pendens. Breach of an oral agreement to restructure a loan was held sufficiently extreme and outrageous in Connecticut National Bank v. Montanari, 9 CSCR 196 (1994). Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in Bosco v. MacDonald, 13 Conn. L. Rptr. No. 10, 312 (1995).  In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme and outrageous to support a jury verdict in the member's favor.  Johnson v. Teamsters Local 559, 102 F.3d 21 (1st Cir. 1996).  See also Anderson v. Drapp, 35 Conn. L. Rptr. No. 11, 415 (2003) (Doherty, J.), holding that criminal stalking over a long period was "extreme and outrageous" within the meaning of the common law.[3]  In Desardouin v. United Parcel Service, Inc., 285 F. Sup. 2d 153, 161 (D. Conn. 2003), the court held that comments by the defendant's driver, made in the presence of the plaintiff's customers, suggesting that the plaintiff was a poor credit risk and arguably making racially demeaning references to him, could be found "extreme and outrageous" so as

---

[3] Acts which, taken individually, may be considered innocuous, may become "extreme and outrageous" when they extend over a period of time such that a jury could consider them to be a pattern of harassment.  Riske v. King Soopers, 366 F.3d 1085, 1089 (10th Cir. 2004).

to survive a motion for summary judgment.  A job supervisor's false accusation of lying, made in the presence of one of the plaintiff's fellow employees, is sufficiently "extreme and outrageous" to warrant submitting the case to the jury.  <u>Musacchio v. Cooperative Educational Services</u>, 1995 WL 681664, 1 Conn. Ops. 1319 (1995).  *Cf*., <u>Decampos v. Kennedy Center, Inc.</u>, 1990 WL 264687 at * 4 (1990).  An allegation that a police officer had written a letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment.  <u>Stack v. Jaffee</u>, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003) (Burns, J.).  A cause of action for intentional infliction of emotional distress was stated in an employment context when the plaintiff alleged that his supervisor "severely harassed and mistreated [him], and created a situation where he was denied effective assistance in the performance of his job, open communication and fairness, unfairly placed on a 60-day performance improvement plan and then constructively fired."  <u>Grossman v. Computer Curriculum Corp.</u>, 131 F. Supp. 2d 299, 310-11 (D. Conn. 2000).[4]  An allegation that an employer framed an employee for theft, terminated her with that as an excuse, and then publicly branded her a thief was sufficiently extreme and outrageous

---

[4] "Conduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other."  <u>Zalnis v. Thoroughbred Datsun Car Co.</u>, 645 P.2d 292, 294 (Colo. App. 1982).

to survive a motion to strike in <u>White v. Thornton Oil Corp.</u>, 32 Conn. L. Rptr. No. 14, 505 (2002); and later, in a ruling by a different judge, to survive a motion for summary judgment in <u>White v. Thornton Oil Corp.</u>, 36 Conn. L. Rptr. No. 8, 279 (2004).  An allegation that an employer had ordered a subordinate to "beg" for her job and, immediately after she did so, fired her, alleged conduct which "if proven, would be deemed outrageous by almost any group of citizens."  <u>Nelson v. Yale University</u>, 39 Conn. L. Rptr. 69, 70 (2005) (Blue, J.).  The action of a police officer in sending a taunting Christmas card to a pretrial detainee at the Hartford Correctional Center was sufficiently "extreme and outrageous" to survive a motion to strike.  <u>Johnson v. Martin</u>, 2 Conn. Ops. 764, 1996 WL 383351, at *3 (Conn. Super. 1996) (Sheldon, J.).  In <u>Talit v. Peterson</u>, 44 Conn. Sup. 490, 497-98 (1997) (Blue, J.), the allegation that the defendants had subjected the plaintiff, a coworker, to unjustified criticism and caused her to lose her job for filing a grievance was held sufficiently extreme and outrageous to survive a motion to strike.  A verbal threat to commit an assault may be "extreme and outrageous" within the law's meaning.  RESTATEMENT (SECOND) OF TORTS § 31 (1965); <u>American Progressive Life & Health Ins. Co. of N.Y. v. Better Benefits, LLC</u>, 35 Conn. L. Rptr. No. 12, 435, 437 (2003) (*dicta*) (Blue, J.).  The disputed allegation that the defendant physicians had falsely reported to police that the plaintiff had physically abused his wife, causing the plaintiff to be arrested, were potentially sufficiently extreme and outrageous to require denial of a motion for summary judgment in <u>Pantaleo v. Ravski</u>, 19 Conn. L. Rptr. No. 1, 28 (1997) (Silbert, J.).  Terminating an employee in

12

retaliation for his union activities has been held to be sufficiently "extreme and outrageous" to support a jury verdict and award of substantial damages for intentional infliction of emotional distress.  Mihalick v. Cavanaugh, 26 F. Supp. 2d 391, 396 (D. Conn. 1998).  The action of a school official in falsely reporting suspected child abuse to the Department of Children and Families was held sufficiently "extreme and outrageous" to survive a motion for summary judgment in Chain v. Biddle, 1999 WL 179623, 24 Conn. L. Rptr. 201 (Licari, J.); and to survive a Motion to Strike in Greco v. Anderson, 2000 WL 1763732, 28 Conn. L. Rptr.  605 (Shortall, J.).  Assigning the plaintiff to a work station close to that of a co-employee who had threatened her and whom she feared was held sufficiently "extreme and outrageous" to survive a motion to strike in Karanda v. Pratt & Whitney Aircraft, 24 Conn. L. Rptr. 521 (1999).

     All of these cases found the conduct alleged to be such that a jury representing a fair cross-section of the community should determine whether it was "extreme and outrageous" as required by the law.  Ultimately, it is a community standards test that applies.  For a court to strike a complaint at the pleading stage, or to grant summary judgment prior to trial, constitutes a judicial determination as a matter of law that the alleged conduct is acceptable in our society.  In any case where it is not obvious that the conduct *is* acceptable, the court should defer to the collective wisdom of the jury.  Faraclas v. Botwick, 32 Conn. L. Rptr. No. 11, 414 (2002).

     Plainly, a jury could find the conduct in this case, if proved, to be "extreme and outrageous" under this standard.  Accordingly, the motion to dismiss must be denied.

        Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Patrick M. Noonan, Esq., Donahue, Durham & Noonan, P.C., 741 Boston Post Road, Guilford, CT 06437.

_____
JOHN R. WILLIAMS