```
           UNITED STATES DISTRICT COURT
             DISTRICT OF CONNECTICUT

SALLY GREENHOUSE             :
                             :
     v.                      :    Civ. NO. 3:05cv1429(AHN)
                             :
YALE UNIVERSITY              :
                             :
```

RULING ON MOTION TO DISMISS

Plaintiff Sally Greenhouse ("Greenhouse") brings this action against Yale University ("Yale") for (1) violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and (2) intentional infliction of emotional distress.  Greenhouse alleges that the Yale School of Drama ("the Drama School") dropped her as a student from a graduate program because of her gender, and that the program's male faculty members ("the Faculty") engaged in offensive behavior that humiliated her.

Pending before the court is Yale's motion to dismiss Greenhouse's claim of intentional infliction of emotional distress.[1]  Yale asserts that Greenhouse has failed to allege that the Faculty's conduct was "extreme and outrageous" or that she suffered "severe emotional distress," both of which are

---

[1] Yale argued in its briefs in support of this motion that the court should not exercise supplemental jurisdiction over the state-law intentional infliction of emotional distress claim under 28 U.S.C. § 1367 because that claim does not arise out the same nucleus of operative fact as the Title IX claim, and because Greenhouse did not properly allege diversity jurisdiction in that she failed to cite the specific jurisdictional statute.  At oral argument, the court gave Greenhouse leave to amend her complaint to add this citation, which she has done.  See Amend. Compl. ¶ 2. Based on the amended complaint, the court is satisfied that the requirements of diversity jurisdiction are met.

elements of a viable intentional infliction of emotional distress claim.  Greenhouse maintains that a reasonable jury could find that the Faculty's conduct was "extreme and outrageous."  She does not address Yale's argument that she has failed to plead "severe emotional distress" with sufficient particularity, but the court does not reach this issue, because it finds that she has failed to allege conduct that is extreme and outrageous, and thus grants Yale's motion to dismiss [doc # 19].

## FACTS

Greenhouse alleges the following facts:  In September 2002, she enrolled as a graduate student in the Directing Department at the Drama School.  Shortly after she matriculated, an unidentified female member of the Yale faculty advised her to "keep [her] distance" from a certain male graduate student at the Drama School, whom the faculty member described as a "psychotic" and potentially dangerous man who had been stalking another female student.  Greenhouse conveyed "her concerns" about the male student to the Interim Chair of the Directing Department ("the Chair").  The Chair expressed his anger at Greenhouse for complaining about her fellow student, accused her of being "coy and provocative," and brushed off her concerns.  The Chair suggested to Greenhouse that she seek psychiatric help and stated:  "Aw, come on, Sally, you're a strong woman, you can handle this guy."

Greenhouse claims that the Faculty humiliated her soon thereafter. Specifically, she alleges:

> On September 21, 2002, [Greenhouse] was participating in a special workshop in the collaborative process which all first-year acting, directing and dramaturgy students were required to attend for the express purpose of learning the skills necessary for collaborative composition in a project based on Homer's "Odyssey." The project, by agreement among faculty and students, was entitled "Metamorphoses [sic] Revisited." The plaintiff was onstage for that project when the instructor, Frank Diehl, announced that he had changed the title to "Metamorphoses Revisited Or Rock Out with Your Cock Out" and instructed the male actors to simulate masturbation while standing next to [Greenhouse]. This simulation actually occurred, to [her] great and obvious humiliation and distress, whereupon the instructor called out: "That was great! Now this time do it again, only really come!" As the male actor closest to the [Greenhouse] began to simulate orgasm, [she] fled the stage as another male student attempted to physically restrain her.

(Amend. Compl. ¶ 8).

Greenhouse complained to the Chair about this incident ("the Metamorphosis Incident"), which deeply offended her, and questioned whether there could be any pedagogical justification or artistic value in these activities. The Chair called a meeting for September 27, 2002, at which he told her he had placed her "on warning" as a preliminary step to dismissal from the Drama School for three specific incidents: (1) having complained during the admission process about perceived sexual discrimination in the financial assistance program; (2) having reported her concerns about the male graduate student; and (3) having complained about the lewdness of the Metamorphosis

3

Incident. A male faculty member at the meeting told her that if she withdrew "by Monday" she could receive two-thirds of her tuition money back.

Greenhouse did not withdraw, and for the remainder of the academic year, the Faculty and students subjected her to "macho" and "frat house" behavior and disparate treatment. Also, on one occasion, the Dean of the Drama School kissed her. On May 15, 2003, the Drama School finally dismissed Greenhouse, even though her work was "obviously superior to that of the male students in the program, none of whom [were] dismissed."

Greenhouse pursued her administrative remedies with Yale, but the university rejected her claims. She thereafter filed this action.

## STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the court may not consider matters outside the pleadings, but may consider documents attached to pleadings, referenced in the pleadings, or integral to the pleadings. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). The court must take all factual allegations in the complaint and its exhibits as true, and construe all reasonable inferences in the plaintiff's favor. See Sharp Int'l Corp. v. State St. Bank & Trust Co., 403 F.3d

43, 49 (2d Cir. 2005). The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether she is entitled to offer evidence to support her claims. See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005). Accordingly, dismissal is appropriate only if it appears that the plaintiff would not be able to prove any facts in support of its claim which would entitle it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## DISCUSSION

Yale urges the court to dismiss Greenhouse's intentional infliction of emotional distress claim because she does not allege conduct that is extreme and outrageous. Greenhouse maintains that a reasonable jury could find the Faculty's behavior was sufficiently offensive to support an emotional distress claim. The court disagrees, and finds that the conduct Greenhouse alleges does not rise to the level required to sustain the claim.

To prevail on an intentional infliction of emotional distress claim under Connecticut law, Greenhouse must allege and prove that (1) the Faculty intended to inflict emotional distress or that it knew or should have known that emotional distress was the likely result of its conduct; (2) the Faculty's conduct was extreme and outrageous; (3) the Faculty's conduct was the cause of Greenhouse's distress; and (4) the emotional distress

Greenhouse sustained was severe.  See Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000).  Liability for intentional infliction of emotional distress requires conduct that exceeds "all bounds usually tolerated by decent society."  See id.  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  See id. at 210-11.  As the Restatement (Second) of Torts explains, a successful intentional infliction of emotional distress claim is generally one where "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  See id. at 211 (quoting Restatement (Second) of Torts, § 46 cmt. d (1965)).  Conduct on the part of a defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.  See id.

    The court has an important gatekeeper function for such claims.  Whether the Faculty's conduct is sufficient to satisfy the requirement of extreme and outrageous conduct is initially a question for the court to determine.  See id. at 210.  Only where reasonable minds could disagree does it become an issue for a jury.  See id.

6

In performing this gatekeeper function, the court concludes that a reasonable jury could not find that the facts that Greenhouse alleges constitute extreme and outrageous behavior. The Chair's comments to Greenhouse may have been inappropriate, but the Connecticut courts have generally held that mere insults or verbal taunts do not rise to the level of extreme and outrageous conduct. See Lucuk v. Cook, No. CV 950050210S, 1998 WL 67412, at *5 (Conn. Super. Ct. Feb. 11, 1998). For example, in Appleton, the Connecticut Supreme Court viewed as insufficiently extreme and outrageous allegations that one of the defendants, a school principal, made condescending comments to the plaintiff, a teacher, in front of her fellow co-workers questioning her vision and ability to read, and representing that the plaintiff "had been acting differently" and should take a few days off from work. See Appleton, 254 Conn. at 211. The comments that Greenhouse alleges the Faculty made to her were milder and more indirect than the verbal insults the Connecticut Supreme Court has held not to constitute extreme and outrageous behavior.

The Metamorphosis Incident, on the other hand, is more likely to be offensive to the average person. Nonetheless, when viewed in the context in which it occurred, the indecency of the incident is diminished. The Metamorphosis Incident did not take place in a conventional workplace or in the context of a

7

professional relationship. Rather, the incident was part of an unfortunate acting exercise among graduate drama students. Many classical dramas contain dialogue and scenes that would be wholly inappropriate if repeated or re-enacted off-stage. While the Faculty may have adapted a classic in a particularly tasteless way, it cannot be said that in so doing it subjected Greenhouse to conduct that exceeded "all bounds usually tolerated by decent society." See id. at 210. A reasonable jury could not find that, in the context of a graduate-school drama workshop focusing on the collaborative process, the Faculty's conduct was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, Yale's motion to dismiss [doc # 19] is GRANTED.

SO ORDERED this 27th day of February, 2006, at Bridgeport, Connecticut.

                                                                     /s/
                                        Alan H. Nevas
                                        United States District Judge