UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SALLY GREENHOUSE | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:05 CV 01429 (AHN) |
| vs. | : | |
| YALE UNIVERSITY | : | |
| Defendant | : | SEPTEMBER 10, 2008 |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE – DAVID BARDEEN**

The defendant hereby opposes the plaintiff's motion in limine seeking to preclude the defendant from offering into evidence the deposition of David Bardeen.

**I.      Plaintiff's Counsel Never Raised an Objection at the Deposition of David Bardeen.**

At the beginning of the deposition of David Bardeen on March 7, 2007, plaintiff's counsel and defense counsel agreed that the deposition was being taken for purposes of trial testimony and all objections would be stated on the record at that time.  See, Depo. David Bardeen, March 7, 2007, at p. 5.  Plaintiff's counsel never objected to any of defense counsel's questions or to David Bardeen's testimony.  Since plaintiff's counsel agreed that all objections to David Bardeen's testimony were to be made at the time of the deposition, and plaintiff's counsel failed to make any objections at the deposition, it is unfair for plaintiff's counsel to attempt to raise an objection at this time since David Bardeen is not available to testify at trial.

DONAHUE, DURHAM & NOONAN, P.C.
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX: (203) 458-4424
JURIS NO. 415438

**II.    The Evidence of the Plaintiff's Participation in an On-Stage Performance is Relevant, Non-prejudicial and Does Not Violate Rule 412 of the Federal Rules of Evidence.**

The plaintiff seeks to preclude the defendant from offering into evidence the deposition of David Bardeen on the grounds that the testimony regarding the plaintiff's participation in an on-stage performance in which a male actor placed his head under the plaintiff's skirt is inadmissible because it is not relevant, improperly prejudicial, and violates the "rape shield" principles of evidence.  See, Pl.'s Mot. in Limine – David Bardeen, at p. 2. The evidence is relevant in that the plaintiff alleges in her complaint that she was offended by a performance in which a male actor simulated masturbation.  (Complaint, at ¶ 8.)  Evidence as to the plaintiff's participation in a performance in which she allowed a male actor to place his head under her skirt to simulate oral sex has a tendency to make it less probable that the plaintiff was offended by the performance in which the male actor simulated masturbation.  It is significant that it was the plaintiff who selected the oral sex scene; she conceded at her deposition that it was not imposed on her by her faculty.  See, Depo. Sally Greenhouse August 28, 2008, at pp. 244-250.[1]

The Advisory Committee Notes to Rule 412 explain that "[i]n an action for sexual harassment...while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-work place conduct will

---

[1] Relevant portions of the plaintiff's deposition are attached as Exhibit A

usually be irrelevant." The plaintiff selected the scene in question for a class at the Yale University School of Drama. Thus, the plaintiff's conduct occurred in the educational environment and the evidence is therefore relevant to the issues presented in this case. In addition, the evidence is not unduly prejudicial to the plaintiff. The jury can determine the proper weight to give to each incident. Indeed, it would be prejudicial to the defendant to preclude evidence of the plaintiff having selected this scene in light of her claim that she was offended by the earlier one.

In Holt v. Welch Allyn, Inc., 2000 WL 98118 *1 (N.D.N.Y. January 11, 2000)[2], the court addressed the plaintiff's Rule 412 motion and noted that "[e]vidence of the victim's sexual conduct 'on-duty, at the workplace, and with named defendant[s]' may be discoverable." The court then ruled that "evidence governed by Rule 412 regarding either plaintiff's workplace conduct or conduct with a named defendant [was] admissible." Id. at *2. Similarly, the court in Chamblee v. Harris & Harris, Inc., 154 F.Supp.2d 670, 680 (S.D.N.Y. July 18, 2001), ruled "that evidence governed by Rule 412 regarding plaintiff's speech and conduct with – and in the presence of – [the defendant] is admissible; but evidence of her sexual conduct outside the workplace (and unrelated to [the defendant]) is not." Since the present plaintiff selected the scene in which she simulated oral sex by having a male actor place his head under her skirt during a class at the Yale University School of Drama, her sexual conduct occurred in the educational environment, and is admissible.

---

[2] Copies of Holt v. Welch Allyn, Inc., 2000 WL 98118 *1 (N.D.N.Y. January 11, 2000) is attached as Exhibit B.

**III.    David Bardeen's Opinion Testimony is Admissible Under Rule 701 of the Federal Rules of Evidence.**

Under Rule 701 of the Federal Rules of Evidence, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The defendant does not intend to elicit expert testimony from David Bardeen, and therefore was not required to disclose him as an expert. In addition, the defendant does not maintain that the faculty based their decision on David Bardeen's observations of the plaintiff. Instead, the defendant intends to offer testimony from David Bardeen about his personal observations of the plaintiff as a fellow student in the classes they shared at the Yale University School of Drama. This evidence will assist the jury in determining whether the defendant's articulated reason for the plaintiff's dismissal was pretextual and the real reason was gender discrimination. This is exactly the type of testimony that is admissible under Rule 701.

**IV.    Conclusion**

Since plaintiff's counsel agreed that all objections would be made on the record during David Bardeen's deposition, and plaintiff's counsel did not voice any objections at that time, it is unfair for the plaintiff to now object to the defendant offering David Bardeen's deposition into evidence at trial. In addition, David Bardeen's testimony regarding the

plaintiff's participation in a performance in which she selected a scene in which a male actor placed his head under her skirt to simulate oral sex is relevant and not unduly prejudicial. Since the performance occurred during a class at the Yale University School of Drama, Rule 412 of the Federal Rules of Evidence does not bar the evidence.   The defendant does not intend to elicit expert testimony from David Bardeen, but only his lay opinion based on his own observations of the plaintiff, and such evidence is admissible under Rule 701 of the Federal Rules of Evidence.   Therefore, the plaintiff's motion in limine should be denied.

THE DEFENDANT,
YALE UNIVERSITY


By _____
Patrick M. Noonan  (ct00189)
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
203-458-9168
pnoonan@ddnctlaw.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

John R. Williams, Esquire
jrw@johnrwilliams.com

Patrick M. Noonan

# EXHIBIT A

1                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT

2

3   **VOLUME II**

4                    No.  3:05CV01429(AHN)

5

6   SALLY GREENHOUSE

7   VS                     **ORIGINAL**

8   YALE UNIVERSITY

9          Deposition of:  **SALLY GREENHOUSE**, taken

10  pursuant to the Federal Rules of Civil Procedure

11  before Barbara L. Murphy, Licensed Shorthand Reporter,

12  License No. 305 and Notary Public within and for the

13  state of Connecticut, held at the offices of

14  Del Vecchio Reporting Service, 151 New Park Avenue,

15  Hartford, Connecticut on August 26, 2008 commencing

16  at 1:05 p.m.

17

18

19

20

21

22            DEL VECCHIO REPORTING SERVICES, LLC
            PROFESSIONAL SHORTHAND REPORTERS

23               117 RANDI DRIVE
              MADISON, CT 06443

24             (203)245-9583
             (203)245-2760

25  STAMFORD             HARTFORD           NEW HAVEN

**DEL VECCHIO REPORTING SERVICES, LLC**

```
 1   thought was salacious during your time at Yale?
 2        A.    No.  Just James Bundy.
 3        Q.    Were you involved in a scene from Cloud 9 in
 4   a class?
 5        A.    Yes.
 6        Q.    How -- what did that scene entail?
 7        A.    What did it entail?
 8        Q.    Can you describe the scene?  What you were
 9   doing in it?
10        A.    I was working with an actor, Allen Read and
11   we were presenting the scene.
12        Q.    And can you describe the scene for us?
13        A.    You know, I haven't read up on that.  It was
14   a specific kind of relationship.  And we had decided
15   to do the scene -- I should give you the background
16   context with my work with the actors.
17             I was very popular with the actors to do
18   scene work with because they knew that I was generous
19   in every aspect of it.  And I wanted them to look
20   good.
21             And I knew Allen really well.  We had been in
22   Drama 50 together.  And it seemed like a scene that
23   would be a kind of a challenge for him and like a
24   break-through scene.  And I had pretty much the
25   reputation for that in the acting class for making it
```

**DEL VECCHIO REPORTING SERVICES, LLC**

1    possible for actors to try things that they hadn't

2    done before.

3              And so in this scene we portrayed a man and

4    woman who had a conflictual desire for each other and

5    class distinction.  I haven't read it in a long time.

6    And there was one section where he goes up underneath

7    my skirt.  I wore a really long skirt so he could go

8    up underneath my skirt.

9         Q.   When you say go up underneath your skirt,

10   with his head?

11        A.   Yeah.

12        Q.   And is the idea that he's simulating oral

13   sex?

14        A.   I think that was the point, um-hm.

15        Q.   And who selected that scene?

16        A.   Who selected it?

17        Q.   Right.

18        A.   You mean whose idea was it?

19        Q.   Yeah, how did you get involved in the scene?

20        A.   Oh, Jim Nicholson, a playwright.

21        Q.   He's another student?

22        A.   No.  He's a friend of mine who is an award

23   winning playwright.

24        Q.   A playwright outside of the school?

25        A.   Um-hm.

```
 1        Q.    Is that a yes?
 2        A.    Yes.
 3        Q.    What course was it that you were portraying
 4   the scene?
 5        A.    Acting.
 6        Q.    And who -- how is it that the outside
 7   playwright is the one who selected the scene or did
 8   you go to him and ask for advice?
 9        A.    I talked to him on the phone and E-mailed
10   him all the time.  He had come to the school.  He had
11   been to the school and he had watched the actors work
12   and he said, "This scene would be a really good one
13   for Allen Read.  Do you think you can do it?"
14            And I said, "Wow, yeah, we can do this in a
15   very demure way."  And I brought it before Allen Read
16   and he said, "I would like to do the scene."  And I
17   said, "Let's try it."
18            So we had it all planned out and it did work
19   very well for him.  In fact, I remember very well the
20   reaction that Evan gave to him about that and the
21   commendation he received and her specific direction
22   that he should be walking across the stage as though
23   he had a big erection which was funny for him because
24   it was the end of the year and by that point I think
25   Allen was -- I think he was feeling at ease enough to
```

DEL VECCHIO REPORTING SERVICES, LLC

1   be able to work on spontaneity.

2           And, you know, he had been I think a little

3   bit more structured about his approach to scene work

4   and expanding his range so that seemed to really work.

5       Q.   So the way that scene got selected was

6   recommended to you by someone outside the school?

7       A.   Who knew who Allen was and who had come to

8   campus and he said, "Why don't you check this out?"

9       Q.   And then you and Allen collaborated on it?

10      A.   Um-hm.

11      Q.   Yes?

12      A.   Yes.  I asked him if he wanted to do it.

13  Did it seem like a scene that -- I mean it gave him --

14  the point of these scenes was to give the actors -- it

15  wasn't really for me to be a great actor.

16          I mean although I thought I did decent work,

17  you know, in timing but it was to give the actors a

18  chance to really expand and get into areas that they

19  were wanting to explore.

20          And so he had a better part in terms of, you

21  know, his lines and the number of lines.  I try to

22  with each actor make sure that they have more lines,

23  that my part was going to be smaller and whatever.

24          And so, you know, we did that and he got a

25  lot of attention and worked on his acting and it went

1  │ fine.  Caryl Churchill is a major playwright, I don't
2  │ know if you know who that is, but probably one of the
3  │ most renowned playwrights of the 20th and 21st century
4  │ experimental playwrights.
5  │      Q.   And in theater as you've experienced it, is
6  │ it fairly common for there to be sexual content?
7  │      A.   Yeah.  Gosh sometimes.
8  │      Q.   You mentioned that Evan Yionoulis said after
9  │ this scene in Cloud 9 that Allen should be walking
10 │ across the stage with an erection.
11 │           Was that by way of saying to him that he had
12 │ done a great job?
13 │      A.   No, no, no, no, no.
14 │      Q.   Okay.
15 │      A.   No, no. She was giving him notes meaning,
16 │ you know, she wanted him to have more of a sense of
17 │ destination and drivenness.
18 │           And in that context what I'm attempting to
19 │ point out to you, although I think you're trying to
20 │ determine that everything is black and white, is that
21 │ in that particular context of that scene written by a
22 │ very renowned playwright which we did very tastefully
23 │ and -- very tastefully, that her note to Allen at that
24 │ point in his training after a year made a difference
25 │ in how he approached the scene and that he was an

**DEL VECCHIO REPORTING SERVICES, LLC**

1  actor who -- maybe it was not as freed up in terms of

2  his range and what is called risk taking and by risk

3  taking I'm not talking about doing sexually vulgar

4  things.

5          I'm talking about risk taking in terms of his

6  interpretation of the scene and the energy and the

7  choices that an actor makes in the interaction in the

8  scene which is always about a conflict, usually a

9  conflict in the scene.

10         So -- and I was really supportive of the

11 actors on the whole.  And so that scene was chosen not

12 because it had an aspect to it that we needed to deal

13 with very tastefully so that it would not be the point

14 of the scene or offensive, you know, and it could not

15 be, Mr. Noonan, because Caryl Churchill wrote it and

16 you get to the core of the definition of art here.

17         And so it was not a prank that he played on

18 me, he didn't choose the scene without telling me, it

19 was all very tasteful and restrained.

20    Q.    When Evan Yionoulis made the -- I guess the

21 directorial comment he should be walking across the

22 scene as though he had an erection, was that an

23 offensive comment?

24    A.    No.  Actually it wasn't and that wasn't

25 exactly what she said.  As though it were leading you

**DEL VECCHIO REPORTING SERVICES, LLC**

1   across the stage and in that particular context it was
2   not -- she wasn't intending to say that for shock
3   value.

4        She's a very restrained articulator.  So it
5   wasn't about that.  It was more, you know, to give him
6   the sense of how that male character would, you know,
7   be impelled to get to that woman.

8        Q.   So there was nothing offensive about either
9   the scene or the direction that accompanied the scene
10  as far as you're concerned, is that fair?

11       A.   I think that -- I wouldn't have done it if
12  it was -- it was an issue to be sure.  Allen and I
13  talked about it a lot.  How can we -- I said I think
14  the scene would be really good for you right now.
15  It's got this one moment in it and I'd like to talk
16  about how can we do this so that, you know, it's not
17  -- it's something that becomes the focus of the scene.

18       And I decided to wear a very long skirt with
19  three layers of tights underneath.  And, you know, it
20  was indicating something that was not in any way --
21  you know, we were interpreting the actions that were
22  set forth in the script, something that we had
23  rehearsed in a way that would not make that the focus.

24       Q.   Did Evan Yionoulis do or say anything to you
25  that caused you to think that she was acting out of

DEL VECCHIO REPORTING SERVICES, LLC

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                        Page 1
Not Reported in F.Supp.2d, 2000 WL 98118 (N.D.N.Y.)

**H**

Holt v. Welch Allyn, Inc.
N.D.N.Y.,2000.
Only the Westlaw citation is currently available
United States District Court, N.D. New York.
Michele R. HOLT and Steven G. McDonald,
Plaintiffs,
v.
WELCH ALLYN, INC.; William F. Allyn, Indi-
vidually and as President of Welch Allyn, Inc.;
Daniel J. Fisher, Individually and as Vice President
of Welch Allyn, Inc.; John Alissandrello, Individu-
ally and as Manager of Welch Allyn, Inc.; Ted T.
Cobb, Individually and as Former Supervisor of
Welch Allyn, Inc.; Richard M. Burke, Individually
and as Jordan Road Personnel Director; Paul
McVagh, Individually and as State Street Personnel
Director; Miles Uebelman, Individually and as
Toolmaker A; Woody Laird, Individually and as
Former Toolmaker A; Scott Ladouce, Individually
and as Toolmaker A; Scott Sherwood, Individually
and as Toolmaker A, Defendants.
**No. 95-CV-1135.**

Jan. 11, 2000.

Emmelyn Logan-Baldwin, Rochester, New York,
for Plaintiffs.
Harris, Beach & Wilcox, LLP, Rochester, New
York, for Defendants, Paul J. Yesawich, III, of
counsel.

ORDER

MUNSON, Senior J.
*1 Following oral argument on January 5, 2000, the
court denied plaintiff's motion to delay trial for six
months due to pre-trial publicity and reserved de-
cision on a large number of motions *in
limine* [FN1] After review of the remaining motions,
the court finds that almost all of them are of the
type that this court, in practice, rules upon during
trial and not beforehand. To that extent, unless the

motion is addressed specifically in this Order, it is
denied without prejudice to be raised at an appro-
priate time during trial, should a need for such a
ruling arise. Certain motions, however, require an
immediate ruling.

> FN1. Not including their supplemental mo-
> tion, plaintiffs' original motion *in limine*
> alone asked for at least twenty-four rul- ings

I. *Rule 412* Motions

As amended in 1994, Rule 412 of the Federal Rules
of Evidence"expand[s] protection afforded alleged
victims of sexual misconduct" and "safeguard[s]
the alleged victim against the invasion of privacy,
potential embarrassment and sexual stereotyping
that is associated with public disclosure of intimate
sexual details and the infusion of sexual innuendo
into the factfinding process."Advisory Committee
Notes, 1994 Amendment to Fed.R.Evid. 412. Al-
though typically applied in criminal cases, Rule 412
likewise applies to civil cases "involving sexual
misconduct," and to Title VII sexual harassment
cases in particular. See*Herchenroeder v. Johns
Hopkins University,* 171 F.R.D. 179, 181
(D.Md.1997).

Subject to specific exceptions, Rule 412 generally
bars the admission of two categories of evidence:
(1) "[e]vidence offered to prove that any alleged
victim engaged in other sexual behavior"; and (2)
"[e]vidence offered to prove any alleged victim's
sexual predisposition"Fed.R.Evid. 412(a)(1). Al-
though the law is proscriptive-*see, e.g.,Socks-
Brunot v. Hirschvogel Incorporated,* 184 F.R.D.
113, 119 (S.D.Ohio 1999) ("while relevant evid-
ence is generally admissible under Fed.R.Evid. 403,
evidence subject to Rule 412 is presumptively inad-
missible, even when offered to disprove
'unwelcomeness' in a sexual harassment
case")-certain evidence is admissible. Evidence of
the victim's sexual conduct "on-duty, at the work-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

place, and with named defendant [s]" may be discoverable, *Barta v. City and County of Honolulu,* 169 F.R.D. 132, 135 (D.Haw.1996), as may be as "[e]vidence of an alleged victim's reputation ... if it has been placed in controversy by the alleged victim."Fed.R.Evid. 412(b)(2).[FN2] Other evidence, such as non-workplace conduct, is irrelevant and inadmissible. *Cf.Barta,* 169 F.R.D. at 136 (evidence of the victim's sexual conduct "off-duty, outside the workplace, and conduct not with named defendant[s]" was not discoverable); *Winsor v. Hinckley Dodge, Inc.,* 79 F.3d 996, 1001 (10th Cir.1996) (a plaintiff's " 'private and consensual sexual activities do not constitute a waiver of his or her legal protections against unwelcome and unsolicited sexual harassment" 'at work) (citation omitted).*See also Burns v. McGregor Elec.Indus., Inc.,* 989 F.2d 959, 963 (8th Cir.1993) (holding that "[t]he plaintiff's choice to pose for a nude magazine outside work hours is not material to the issue of whether plaintiff found her employer's work-related conduct offensive").

> FN2. The reputation of an alleged victim, however, clearly is not admissible if he or she does not place it in controversy. *Id.*

*2 Accordingly, assuming such evidence is otherwise admissible at trial, evidence governed by Rule 412 regarding either plaintiff's workplace conduct or conduct with a named defendant will be admissible; evidence of non work-related conduct will not be admissible. Should a question arise as to whether conduct is sufficiently work-related, it can be resolved at an appropriate time outside of the jury's presence.

## II. Plaintiffs' Experts

Plaintiffs wish to present testimony from two experts at trial: Dr. David Berry, a psychological expert, and Larry Lichtenstein, Ph.D., an economics expert. Defendants contend the disclosure of the experts failed to comport with the Federal Rules of Civil Procedure and request that their testimony be precluded.

After consideration of the record, the court denies defendants' motion to preclude Dr. Berry's, but precludes Lichtenstein's testimony. The court precludes the latter from testifying because not until December 2, 1999, which was well after the discovery and disclosure of expert deadlines ended in this matter, did plaintiffs file any report as mandated by Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiffs actions are tantamount to trial by ambush and defendants' motion to preclude Liechtenstein's testimony is granted.

## III. Amending the Caption

Plaintiffs note that according to a recently published newspaper article, defendant Welch Allyn, Inc. will change its corporate structure. A new holding company, known as Welch Allyn Ventures, LLC, will assume the defendant corporation's operations. Plaintiffs ask the court to permit them to amend the caption of this action to reflect this change. Defendants have not objected to the request and, as it seems reasonable, the court grants plaintiffs' request. Upon the aforementioned change of corporate structure, plaintiffs may amend their action.

IT IS SO ORDERED.

N.D.N.Y.,2000.
Holt v. Welch Allyn, Inc.
Not Reported in F.Supp.2d, 2000 WL 98118 (N.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.