UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SALLY GREENHOUSE | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:05 CV 01429 (AHN) |
| vs. | : | |
| YALE UNIVERSITY | : | |
| Defendant | : | SEPTEMBER 15, 2008 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW

The defendant has moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The following memorandum is offered in support of that motion.

### I.     Legal Standard

A court may issue a judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "The trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also, Ortiz v. Brymer, 2005 WL 3658068 *1 (D.Conn. Dec. 29) (internal citations omitted) (A court may grant a motion for judgment as a matter of law "if the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of

**DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK   •   741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO 415438

the evidence, there could be but one conclusion as to the verdict that reasonable persons could have reached.")

## II.    The Plaintiff Has Failed To Prove A *Prima Facie* Case Of Gender Discrimination

Judgment as a matter of law should be entered in favor of the defendant as to the plaintiff's claim of gender discrimination because the plaintiff has not shown circumstances that give rise to an inference of discrimination. In order to establish a prima facie claim of discrimination, the plaintiff must establish four elements with respect to her claim of discrimination:  (1) she was within a protected group, (2) she was qualified for the position, (3) she suffered an adverse action, and (4) the action occurred under circumstances giving rise to an inference of discrimination.   See Chance v. Reed, 538 F.Supp.2d 500, 510 (D.Conn. 2008) (Thompson, J.).[1]  See also Koumantaros v. City University of New York, 2007 WL 840115, at *8 (S.D.N.Y. Mar. 19, 2007).  The present plaintiff has failed to establish a prima facie case of discrimination because she has failed to establish that she was qualified to remain in the program and has failed to establish that her dismissal occurred under circumstances giving rise to an inference of discrimination.

The circumstances of the plaintiff's dismissal cannot give rise to an inference of discrimination because the individuals primarily responsible for admitting the plaintiff to the

---

[1] Yusuf v. Vassar College, 35 F.3d 709, 714 (2d Cir. 1994) ("courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII")

Yale School of Drama -- Professor Elizabeth Diamond and Professor David Chambers -- are the same individuals who were primarily responsible for initiating her dismissal. It is well established that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d. Cir. 1997), citing, LeBlanc v. Great American Insurance Co., 6 F.3d 836, 847 (1st Cir.1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174-75 (8th Cir.1992); Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991) ("[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."). See also Roman v. Cornell, 53 F. Supp. 2d 223, 236 (N.D.N.Y. 1999) ("[I]n cases where the hirer and the firer are the same individual[s] and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."); Jackson v. Norwalk Bd. of Educ., 2004 WL 2472223 *8 (D.Conn. Sep. 09) (Fitzsimmons, J.). For example, in Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000), the plaintiff, who alleged age discrimination, was fired by the same individual who had hired him three years earlier, when the plaintiff was already was 60 years old. The

Second Circuit Court of Appeals held that this was "a highly relevant factor" in affirming the District Court's summary judgment in favor of the defendant.

It is also highly relevant in the present case that the decision to admit the plaintiff to the program was primarily made by the same two individuals who, approximately nine months after the plaintiff enrolled in the university, initiated the decision to dismiss her from the School of Drama. Of course, those two individuals knew the plaintiff's gender at the time they made the decision to admit her. Such a circumstance does not give rise to an inference of discrimination. It is even less likely that discrimination occurred where, as here, one of the two individuals involved in the decision to dismiss the plaintiff was the same gender as the plaintiff. See Horvath v. Thompson, 329 F.Supp.2d 1, 5 (D.D.C.2004) (stating that the burden of demonstrating discrimination "is even tougher" where the plaintiff's gender is the same as the alleged source of the discrimination); Turner v. District of Columbia, 383 F.Supp.2d 157, 176 (D.D.C. 2005) ("It is nonsensical to draw an inference of gender discrimination, however, from an action allegedly directing one female employee to perform certain tasks instead of another female employee.").

The evidence in fact clearly establishes that the plaintiff was dismissed for no reason other than her own poor performance. From the beginning of her first semester in September of 2002 the plaintiff proved to be a poor student and was therefore placed on warning. Specifically, the plaintiff demonstrated a complete inability to engage in the collaborative process that is required in the drama program. The plays directed by the plaintiff as part of her first year coursework were of extremely poor quality because of her inability to communicate

4

and work with the actors, stage managers, playwrights and others in a collaborative manner. The plaintiff worked so poorly with the other students that they asked to be assigned to other directors. The plaintiff was also extremely confrontational with both fellow students and faculty. While on probation, the plaintiff was observed closely by the Chair of the Directing Department, Elizabeth Diamond, who is female and similar in age to the plaintiff. James Bundy, the Dean of the School of Drama, also had ample opportunity to observe the plaintiff's performance. He attended the plaintiff's rehearsals in the Collaborative Work Project, taught plaintiff in the classroom, and allowed her to work with him as his assistant director on one play. He concluded that the plaintiff's communication with actors was entirely negative, leaving actors feeling beaten down. Both he and Ms. Diamond concluded that the plaintiff would not be able to succeed in the second year of the program, when she would have been required to lead even larger collaborative efforts. Following her second semester, Ms. Diamond recommended that the plaintiff be dismissed from the program. This recommendation was approved unanimously by the faculty of the Yale University School of Drama.[2] These circumstances demonstrate that the plaintiff was not qualified for the School of Drama, leading to her dismissal. These circumstances also do not give rise to an inference of discrimination, but rather establish that the plaintiff's dismissal was solely the result of her own poor performance. Therefore, judgment should be entered in favor of the defendant on the plaintiff's claim for gender discrimination.

---

[2]The decision to place the plaintiff on probation was communicated at an early date, in order to allow the plaintiff to withdraw before incurring any charges for tuition, in the event that she felt she could not remedy the

**III.    The Plaintiff Has Failed To Prove Her Hostile Environment Claim.**

The defendant is also entitled to judgment as a matter of law on the plaintiff's claim of sexual harassment. In order to prove this claim, the plaintiff was required to establish three elements: (1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by Yale University; (2) Yale University had actual knowledge of the sexual harassment; and (3) Yale University was deliberately indifferent to the harassment. See Doe ex rel. Doe v. Hamden Bd. of Educ., 3:06CV1680, 2008 WL 2113345 (D.Conn. May 19, 2008) (Dorsey, J.); Davis Next Friend Lahonda D. v. Monroe County Bd. of Educ., 526 U.S. 629 (1999). The plaintiff must do much more than establish that she found certain conduct offensive, she must prove that the environment was objectively hostile and abusive, that is, that it was "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of, in this case, the victim's educational environment." Hayut v. State University of New York, 352 F.3d 733, 745 (2d Cir. 2003), citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations omitted; internal quotation marks omitted). See also Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir.1995) (requiring that the harassment "has the purpose or effect of unreasonably interfering with an individual's ... performance or creating an intimidating, hostile, or offensive ... environment.") (internal quotation marks omitted).

---

deficiencies which were noted in her performance.

Whether gender-oriented conduct rises to the level of actionable harassment depends on a "constellation of surrounding circumstances, expectations and relationships." Davis, supra, 526 U.S. at 651. Determining whether an environment is "hostile," requires:

> examining the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's academic performance. . . . Finding the harassment pervasive means that the challenged incidents are "*more than episodic; they must be sufficiently continuous and concerted.*"

Hayut, supra, 352 F.3d at 744 (citations omitted; emphasis added; internal quotation marks omitted). See also Harris, 510 U.S. at 23; Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir.1989). Moreover, a plaintiff alleging sexual harassment must show the hostility was based on membership in a protected class. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 77 (1998). Thus, to succeed on a claim of sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] ... because of ... sex." Id. at 81.

The plaintiff's retaliation claim is based on only three events. The exercise in her Drama 50 course in which students elected to simulate masturbation; an incident during an acting exercise in which she was asked by her instructor to straddle a male student; and an incident following a party attended by students and faculty of the School of Drama in which Dean James Bundy gave her a goodnight kiss. These incidents are neither severe nor pervasive. While these incidents may have been unpleasant for the plaintiff, that is not sufficient. Similar to the present case, in Elgamil v. Syracuse University, 2000 WL 1264122,

*8 (N.D.N.Y. 2000), the plaintiff claimed she was subjected to behavior by a professor/advisor that consisted primarily of his yelling at her, being rude to her, and not responding to her requests as she felt he should. She also claimed that the professor/advisor told plaintiff of his sexual interactions with other women, and made a single, non-sexual comment about a dream in which plaintiff, plaintiff's husband, and he were all present. The court held that "[t]his behavior is insufficient to state a hostile environment claim, despite the fact that it may have been unpleasant," and granted summary judgment in favor of the defendant university. Id. at *7-8. See also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir.1998) (Plaintiff complained of conduct directed towards her including sexual touching and comments. She was told by her supervisor that she had been voted the "sleekest ass" in the office and the supervisor deliberately touched her breasts with some papers he was holding. Court held these acts were neither severe nor pervasive enough to state a claim for hostile environment.); Levarge v. Preston Bd. of Education, 552 F.Supp.2d 248 (D.Conn. 2008) (Droney, J.) (plaintiff, a male student, was not subjected to a sexually hostile educational environment in violation of Title IX when he was subjected to thrown food and homophobic teasing in the school cafeteria after he asked another male student if he loved him; the other students' conduct was not so severe, pervasive, and objectively offensive that student was effectively denied equal access to the school.). Gutierrez v. Henoch, 998 F.Supp. 329, 335 (S.D.N.Y.1998) (disputes relating to job-related disagreements or personality conflicts, without more, do not create sexual harassment liability); Christoforou v. Ryder Truck Rental, Inc., 668 F.Supp. 294, 303 (S.D.N.Y.1987) ("there is a crucial difference

between personality conflict ... which is unpleasant but legal ... [and sexual harassment] ... which is despicable and illegal."). The incidents complained of by the plaintiff do not match the severity of the conduct described in the above case law in which judgment was entered in favor of the defendants. The plaintiff was not subjected to inappropriate touching or any sexually charges comments directed specifically at her.

Three isolated incidents simply cannot constitute pervasive harassment, especially when they were as innocuous as the incidents claim in this matter. For example, in Soriano ex rel. Garcia v. Board of Educ. of City of New York, 2004 WL 2397610, *6 (E.D.N.Y. 2004), the plaintiff alleged sexual harassment based on two encounters, taking place nearly six months apart, in which a student touched the plaintiff's vagina through her skirt, and the second involving a slap on her buttocks. The court held that "[t]hese are strikingly offensive acts indeed, but plaintiffs have failed to demonstrate that they rise to the level of pervasive harassment such that [the plaintiff] was deprived of equal access to an institution's resources and opportunities." Id. The court therefore granted summary judgment in favor of the defendant. Id. (Internal quotation marks omitted.) If two "strikingly offensive" incidents involving inappropriate touching do not satisfy the severe and pervasive requirement, then the three isolated incidents alleged by the plaintiff, which are far less offensive, also cannot meet that requirement. There has also been no evidence whatsoever that the plaintiff was deprived of access to educational opportunities. Rather, she continued to attend her classes and participate in the required projects for the School of Drama.

The conduct complained of by the plaintiff is also not objectively offensive. It must be noted that this Court has already dismissed the plaintiff's claim of intentional infliction of emotional distress, finding that the conduct alleged by the plaintiff did not rise to the level required to sustain such a claim. (See Ruling on Motion to Dismiss, dated March 1, 2006, p. 5.) As this Court noted in its decision, liability for intentional infliction of emotional distress has been found only where the conduct alleged goes beyond all possible bounds of decency in a civilized community. (See Ruling on Motion to Dismiss, dated March 1, 2006, p. 6.) Therefore, if the conduct alleged by the plaintiff, as determined by this court, is not beyond the bounds of decency, then it also cannot be considered objectively offensive under the similar standard required for a sexual harassment claim. In this regard it should also be noted that, in the classic movie, When Harry Met Sally, the actress Meg Ryan simulates an orgasm in a public diner. This movie is now routinely aired on daytime television. This certainly would not be the case if simulation of an orgasm where objectively offensive.

In determining whether conduct is objectively offensive, the context in which it occurred must also be considered. See Davis, 526 U.S. at 645. The conduct complained of in the present case took place among drama students and as part of an exercise in a drama school. Certainly, a drama student participating in a school project could be considered more open-minded than a member of the general public.

Finally, the plaintiff has not demonstrated that the defendant had actual knowledge of the alleged harassment or that it was deliberately indifferent. It must be noted that the Drama 50 course exercise was selected by students, not faculty of the school. Title IX liability for

student-on-student harassment is limited "to circumstances wherein the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, supra, 526 U.S. at 645. See also Elgamil, supra, 2000 WL 1264122 at *5, n.5 ("The Supreme Court explicitly departed from the respondeat superior principles which ordinarily govern Title VII actions for purposes of Title IX . . . .) Additionally, the plaintiff was not subjected to similar occurrences after she voiced her complaints. "The circuits that have taken the question up have interpreted this to mean that there must be evidence that actionable harassment continued to occur after the appropriate school official gained actual knowledge of the harassment." Elgamil, supra, 2000 WL 1264122 at *8, citing, Reese v. Jefferson Sch. Dist., 208 F.3d 736, 740 (9th Cir.2000).

Therefore, the plaintiff has failed to prove her claim of sexual harassment and judgment should be entered in favor of the defendant.

## IV.    Retaliation

In order to prevail on her claim of retaliation, the plaintiff must prove that the defendant dismissed her from the Drama School because she complained of gender discrimination. See Jackson v. Birmingham Bd. of Educ, 544 U.S. 167, 174 (2005). She has failed to do this. The plaintiff claims three instances where she made complaints of gender discrimination: (1) after being told by a financial aid officer that she had to choose between motherhood and Yale University; (2) after the simulated masturbation exercise during the Drama 50 course; and (3) reporting that she felt uncomfortable around fellow student Chris Sanderson. These complaints were made in September of 2002, and it was not until May of

2003 that the decision was made to dismiss the plaintiff based on the unanimous vote of all faculty members.  See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir.2001) (to establish a causal connection indirectly, in a retaliation claim, the protected activity must be "closely followed in time by the adverse action"); Chang v. Safe Horizons, 254 Fed. Appx. 838, 839 (2d Cir. 2007) (plaintiff's "termination on August 4, 2000 occurred almost one year after her complaint of discrimination, thus undermining any causal nexus based on temporal proximity"); Loris v. Moore, 2008 WL 3891730 *13 (D.Conn. August 20, 2008) (Eginton, J.).   There is not a sufficient temporal proximity between the alleged complaints of gender discrimination and her dismissal from the School of Drama to support a claim of retaliation.  In addition, there is simply no evidence that the dismissal was a result of the plaintiff's complaints, made nearly eight months previous.

The plaintiff also cannot rely on the fact that she was placed on academic warning as not every unwelcome event constitutes an adverse employment action.  In the Second Circuit, an adverse employment action is defined as "a materially adverse change in the terms and conditions of employment. … To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Sanders v. New York City Human Resources Administration, 361 F.3d 749, 755 (2d Cir. 2004) (citation omitted; internal quotation marks omitted).  It is well established in this Circuit that "[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action." Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir.2006).  See also Chang, supra, 254 Fed. Appx. at 839 (Because defendant

issued plaintiff "warnings consistent with its progressive discipline policy, [plaintiff] did not suffer a materially adverse action under the circumstances."). Similarly, the placement of the present plaintiff on academic warning, consistent with university policies, cannot constitute an adverse action that would support a claim of retaliation. Therefore, judgment should also be entered on the plaintiff claim of retaliation under Title IX.

V.      **The Plaintiff Has Failed To Prove She Suffered Any Economic Damages As A Result of The Defendant's Conduct.**

Even assuming the plaintiff has established liability under Title IX – and she has not – she has failed to prove by a preponderance of the evidence that she suffered any economic damages due to the defendant's conduct. The plaintiff is attempting to claim as economic damages her living expenses for the time she was a student at Yale University. However, she would only be entitled to such damages if she could prove that it cost her more money to live in Connecticut than it would have if she had stayed at her previous home and not attended Yale. She has not done this.

The plaintiff is also not entitled to reimbursement for the tuition she paid to attend Yale. While the plaintiff was dismissed at the end of her first year, she received valuable training and schooling. Therefore, the plaintiff has received value in return for her tuition and she is not entitled to reimbursement. It should be noted that the payment of tuition does not guarantee the awarding of a degree. The plaintiff has therefore not proven any damages as a result of the defendant's alleged conduct and judgment should be entered in favor of the defendant.

**VI.    The Plaintiff Is Not Entitled To Punitive Damages.**

The plaintiff has not proven conduct on the part of the defendant that would entitle her to an award of punitive damages.  The Supreme Court has clarified the federal standard for imposing punitive damages: "Punitive damages [under Title VII] are limited ... to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Kolstad v. American Dental Ass'n, 527 U.S. 526, 529-30, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), quoting 42 U.S.C. § 1981a(b)(1).  Malice and reckless indifference refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. at 535.  A "positive element of conscious wrongdoing" is required for an award of punitive damages.  Id. at 538, quoting C. McCormick, Law of Damages 280 (1935).  The standard has been further clarified:  "Malice means 'intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'" Goldsmith v. Bagby Elevator Company, Inc., 513 F.3d 1261,1280 (11th Cir. Jan. 17, 2008). To the same effect are Ferrill v. Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999) and Spelunge v Shoney's, Inc., 97 F.3d 488, 491 (11th Cir. 1996).

As an alternative to proving that the defendant knew it was acting in violation of federal law, "[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.'" Id.  See also Farias v. Instructional Systems, Inc., 259 F.3d 91, 101 (2d. Cir. 2001).  "To be entitled to an award of punitive damages, a claimant must show

a positive element of conscious wrongdoing." (Internal quotation marks omitted.) <u>New Windsor Volunteer Ambulance Corps, Inc. v. Meyers</u>, 442 F.3d 101, 121 (2d Cir. 2006).

It has been noted that plaintiffs face a "formidable burden" when seeking punitive damages for employment discrimination. <u>See</u> <u>Sturgill v. United Parcel Service, Inc.</u>, 512 F.3d 1024 (8th Cir. Jan. 15, 2008); <u>Canny v. Dr. Pepper/7-Up Bottling Group, Inc.</u>, 439 F.3d 894, 903 (8th Cir. 2006). Examples of conduct which can support a punitive damages award include: "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations." <u>Dudley v Wal-Mart Stores</u>, Inc. 166 F.3d 1317, 1322-23 (1999); <u>Goldsmith</u>, <u>supra</u>, 2008 WL 150585, at *14.

The evidence presented by the plaintiff does not rise to the level of conduct required for an award of punitive damages.

## CONCLUSION

For the reasons stated herein, judgment as a matter of law should be entered in favor of the defendant, pursuant to Fed. R. Civ. P. 50(a).

THE DEFENDANT,
YALE UNIVERSITY

By *Patrick M. Noonan*
Patrick M. Noonan (ct00189)
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
203-458-9168
pnoonan@ddnctlaw.com

**CERTIFICATION**

This is to certify that a copy of the foregoing was hand delivered on the above-written date,

to:

John R. Williams, Esquire
jrw@johnrwilliams.com


_____
Patrick M. Noonan